United States District Court
Southern District of Texas
**ENTERED**
March 04, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| INES ISELA CARBAJAL ET AL., | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-182 |
| | § | |
| NORMA LIMON ET AL., | § | |
| Defendants | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Defendants' Motion to Dismiss.  Dkt. No. 17.  For the reasons provided below, it is recommended that the Court: (1) **GRANT** Defendant's Motion to Dismiss, in part; (2) **DISMISS** Plaintiffs' live Complaint for lack of jurisdiction; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## I. Background

Plaintiffs Ines Isela Carbajal and Juan Manuel Garcia filed their live "Second Amended Complaint for Declaratory and Injunctive Relief" (hereinafter, Plaintiffs' "Live Complaint" or "Complaint") on February 25, 2020.  Dkt. No. 16.  They name as Defendants: (1) Norma Limon, District Director of the United States Citizenship and Immigration Services ("USCIS"); (2) Mike Pompeo, United States Secretary of State;[1] and, (3) the United States of America.  *Id.* at 1, and 2 at ¶ 8.  Plaintiffs claim that this Court has jurisdiction pursuant to 8 U.S.C. § 1503(a); 28 U.S.C. § 1331; the Declaratory Judgment

---

[1] Antony J. Blinken is currently the U.S. Secretary of State.  As Plaintiffs have sued Pompeo in his official capacity (*see* Dkt. No. 16 at ¶ 8), Blinken is substituted for Pompeo as a Defendant.

Act ("DJA"), 28 U.S.C. §§ 2201-02; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.  *Id.* at 1.

Pursuant to 8 U.S.C. § 1503(a), Plaintiffs challenge the Department of State's denial of Carbajal's application for a passport.  Dkt. No. 16 at ¶¶ 28-30.  They also appear to challenge the USCIS's "factfinding procedures" under the APA.  *Id.* at ¶ 33.[2]  They indicate that the USCIS's failure to conduct an evidentiary hearing caused the Department of State to deny Carbajal's passport application.  *Id.* at ¶¶ 29, 33.  Relatedly, Plaintiffs assert that the USCIS violated the APA when it: (1) denied the I-130 immigrant visa petition Carbajal filed for Garcia; and, (2) denied Garcia's I–485 application for adjustment of status.  *Id.* at ¶¶ 31-32.   In support of their Complaint, they assert as follows:

1.  Carbajal is a United States citizen by birth.  She was born with the assistance of a midwife in Palestine, Texas on "October ____, 1985."  Docket No. 16 at ¶ 9.  Her parents were both Mexican nationals.  *Id.* at ¶ 12.  Her birth occurred unexpectedly while her parents were vising family in Palestine.  After Carbajal was born, her parents returned with her to Mexico.  *Id.* at ¶¶ 15-17.  Her birth was "timely filed" in the U.S. on November 21, 1985.  *Id.* at ¶ 9.

2.   Approximately four months later, Carbajal's father registered her birth in Mexico, as if she had been born in Mexico, so that she could receive vaccinations, attend school in Mexico, and be covered by his insurance.  *Id.* at ¶ 18.  On October 21, 1986, she

---

[2]  It is not clear whether Plaintiffs intend to challenge the USCIS's factfinding procedures as an independent cause of action.  To the extent that is their intention, the Court has addressed the claim below in an abundance of caution.

was baptized in Mexico "with her Mexican birth certificate." *Id*. at ¶ 19.  Carbajal attended school in Mexico through college.  *Id*. at ¶ 18.

3.  Garcia is a native citizen of Mexico.  *Id*. at ¶ 7.  On July 10, 2015, Garcia and Carbajal married in Hidalgo, Texas.  *Id*. at ¶ 21.  Together they have a son who was born in Edinburg, Texas in August of 2015.  *Id*.

4.  On August 18, 2016, Carbajal filed an I-130 immigrant visa petition for Garcia (hereinafter, Carbajal's "I-130 petition").  Garcia filed an I–485 application for adjustment of status to become a Legal Permanent Resident ("LPR") on or about that same date.  *Id*. at ¶ 3.  On April 23, 2018, while Garcia's I–485 application was under review, Carbajal applied for a U.S. Passport.  *Id*. at ¶ 4.  As of April 29, 2015, "there were no holds or allegations before the State of Texas that [Carbajal's] birth certificate was fraudulent."  *Id*. at ¶ 9.

5.  On December 18, 2018, the USCIS denied Carbajal's I-130 petition.  The USCIS also denied Garcia's I–485 application and revoked his employment authorization document.  *Id*. at ¶ 5.  The USCIS placed a "flag" on Carbajal's Texas birth certificate and concluded that Carbajal had not proven that she had been born in the U.S.  *Id*. at ¶ 24. The "policy of the USCIS" is now to deny the I-130 petitions of petitioners who have been born in the U.S. if: (1) they were born in a maternity clinic, or with a midwife; and, (2) they also have a Mexican birth certificate.  *Id*. at ¶ 27.

6.  On June 11, 2019, the Department of State denied Carbajal's passport application. *Id*. at ¶ 26.  In the letter she received notifying her of this decision, the Department of State informed her that her U.S. birth certificate had been flagged as fraudulent.  The Department of State indicated that this had occurred due to the discovery of a Mexican birth record in her name.  Additionally, the Department of State asserted

that she had not "submitted sufficient public records" to support her claim that she had been born in the U.S.  *Id.*  The Department of State "did not provide [her] with an opportunity to address any concerns they may have [had] regarding her birth in Texas[.]" Dkt. No. 16 at ¶ 29.

7.  The USCIS's flagging of Carbajal's Texas birth certificate also caused a United States Customs and Border Protection ("CBP") officer to detain Carbajal and her three-year-old son, in 2018, when they were attempting to enter the U.S. through the San Juan Port of Entry.  *Id.* at ¶ 25.  The CBP officer questioned Carbajal about her citizenship, threatened her, and tried to force her to admit that she had not been born in Texas.  The CBP did not release her from custody until the next morning, after failing to obtain a false confession that she had not been born in Texas.  *Id.*

8.  Pursuant to 8 U.S.C. § 1503(a) ("Proceedings for declaration of United States nationality"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Carbajal is entitled to a declaratory judgment stating that she is a United States citizen.  *Id.* at ¶ 29. She is also entitled to a review of the USCIS's "factfinding procedures" under the APA § 706(2)(F).  *Id.* at ¶ 33.[4]  As the intended beneficiary of Carbajal's I-130 petition, Garcia, along with Carbajal, is entitled to APA review of the USCIS's denial of that petition.  He is also entitled to APA review of the USCIS's denial of his I–485 application.  *Id.* at ¶ 32.  *See also* Dkt. No. 20 at 6, 8; Dkt. No. 27 at 9.

9.  To compensate for Defendants' errors and to protect them going forward, Carbajal and Garcia should also receive a permanent injunction preventing the USCIS

---

[4] Again, it is not clear whether Plaintiffs intend to challenge the USCIS's factfinding procedures as an independent cause of action.  To the extent that is their intention, the Court has addressed the claim below in an abundance of caution.

from: (1) refusing to reconsider Carbajal's I-130 petition; (2) refusing to approve Carbajal's I-130 petition; (3) refusing to reconsider Garcia's I–485 application; and, (4) refusing to approve Garcia's I–485 application.  Dkt. No. 16 at 8.  In addition, they are entitled to attorney's fees, costs, and any other relief that is just and appropriate.  *Id.*

Defendants filed their Motion to Dismiss on March 06, 2020.  Dkt. No. 17.  In brief, Defendants argue that: (1) the Court lacks jurisdiction to review Carbajal's 8 U.S.C. § 1503(a) claim against Blinken because it is time-barred; (2) the Court lacks jurisdiction to review Carbajal's § 1503(a) claim against the USCIS because she failed to exhaust her administrative remedies;[5] (3) the Court lacks jurisdiction to review all of Plaintiffs' APA claims; (4) Plaintiffs are not entitled to injunctive relief; and (5) Plaintiffs have failed to state claims against Limon and the United State of America as they are not proper parties to this lawsuit.  *Id.* at 6-14.[6]  Plaintiffs filed their "Opposition to Defendants' Motion to Dismiss" (hereinafter, Plaintiffs' "Response") on March 18, 2020.   Dkt. No. 20. Thereafter, Defendants then filed a "Reply," Plaintiffs obtained leave and filed a "Sur-Reply," and Defendants filed a "Notice of Supplemental Authority."  *See* Dkt. Nos. 24, 27, 31.  This case is now ripe for review.

## II.  Legal Standards

**A.  FED. R. CIV. P. 12(b)(1).**  "Federal courts are courts of limited jurisdiction[.]" *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v.*

---

[5]  As discussed below, Plaintiffs state that they have not brought a § 1503(a) claim against the USCIS.

[6]  Defendants additionally argue that William Barr is not a proper party to this lawsuit.  Dkt. No. 17 at 13.  However, Plaintiffs' Live Complaint does not list Barr as a defendant.  *See* Dkt. No. 16, at 1-2.

*United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  The party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).  Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim for lack of subject matter jurisdiction when it lacks the constitutional or statutory power to adjudicate the claim.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  A court may dismiss an action for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986).

**B.  8 U.S.C. § 1503(a)**.  Section 1503(a) of Title 8 of the United States Code provides that:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States . . . . An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege[.]

8 U.S.C. § 1503(a).

**C.  The APA**.  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  In such circumstances, where the plaintiff is not seeking money damages, the APA acts as a waiver

of the government's sovereign immunity, allowing the plaintiff to proceed in federal court to rectify agency action. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). The APA only provides recovery over "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, plaintiffs may not sue under the APA unless: (1) the action they seek to challenge is a final action; and, (2) no alternative, adequate judicial remedy is available to them. *See id*; *Cavazos v. Kerry*, No. 3:15-cv-0661-G, 2016 WL 4126142, at *4 (N.D. Tex. Aug. 3, 2016) (same).

An agency action is considered final under the APA when two requirements are met. *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997); *Villarreal v. Horn*, No. 1:15-CV-111, 2017 WL 6442839, at *7 (S.D. Tex. Sept. 19, 2017). "First, the action must 'mark the consummation of the agency's decisionmaking process,' such that the action is not 'merely tentative or interlocutory[.]'" *Bennett*, 520 U.S. 154, 177–78 (citations omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Id.* (citations omitted). *See also Texas v. Rettig*, 968 F.3d 402, 413 (5th Cir. 2020) (same); *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505 (5th Cir. 2016) (same). If a step is an intermediate step in an administrative process, it "cannot be viewed as a 'consummation' of agency decision making." *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (citations omitted).

Section 704's requirement that there be no alternative, adequate remedy available "reflects Congress'[s] judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846

F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).   The Supreme Court instructs the lower courts to give § 704 a "hospitable interpretation[.]" *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967).   Courts should not construe it to "defeat the central purpose [of the APA] of providing a broad spectrum of judicial review of agency action[.]" *Bowen v. Massachusetts*, 487 U.S. 879, 903 (internal quotation marks omitted).   When a plaintiff has other adequate remedies, which preclude him from proceeding with a claim under the APA, dismissal under Rule 12(b)(1) is appropriate. *Villarreal v. Horn*, 203 F. Supp. 3d 765, 776 (S.D. Tex. 2016); *De la Garza Gutierrez v. Kerry, et al.*, No. 1:16-cv-00223 (S.D. Tex. Mar. 22, 2017); *Trader Properties, LLC v. United States*, No. G-14-254, 2015 WL 1208983, at *1-2 (S.D. Tex. Mar. 16, 2015).

"[T]he APA does not create an independent grant of jurisdiction to bring suit." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152, n.13 (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977)).   "If section 702 of the APA creates a cause of action[,]" then "jurisdiction exists under the general federal question statute, not the APA."   *Id.* (citing 28 U.S.C. § 1331; *Dunn–McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997)).   In that case, the APA "serves as the waiver of sovereign immunity that allows a private party to sue the government" agency.   *Id.* (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225).   *See also Lundeen v. Mineta*, 291 F.3d 300, 304–05 (5th Cir. 2002) (noting that, if § 702 of the APA creates a cause of action, not precluded by § 701(a)(1) or (2), then federal question jurisdiction exists under 28 U.S.C. § 1331); *Cambranis v. Pompeo*, No. 5:19-CV-0238-JKP, 2020 WL 1447380, at *4–9 (W.D. Tex. Mar. 24, 2020) (noting that the "APA provides a jurisdictional basis for judicial review through 28 U.S.C. § 1331"); *Assadzadeh v. Mueller*, No. CIV.A. 07-2676, 2007 WL 3252771, at *4 (E.D. Pa. Oct. 31, 2007) ("[T]he APA does not provide an

independent jurisdictional basis; rather, jurisdiction over an APA claim arises under the federal question statute, 28 U.S.C. § 1331.") (citations omitted); *Borg-Warner Protective Servs. Corp. v. U.S. E.E.O.C.*, 81 F. Supp. 2d 20, 25 (D.D.C. 2000) ("[J]urisdiction over APA challenges to federal agency action is vested in district courts unless a preclusion of review statute . . . specifically bars judicial review[.] *Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985)."); Richard H. Seamon, *The Provenance of the Federal Courts Improvement Act of 1982*, 71 Geo. Wash. L. Rev. 543, 598 (2003) ("The district courts' jurisdiction for APA claims typically comes from the federal-question statute, 28 U.S.C. § 1331, in the absence of a more specific grant of subject-matter jurisdiction.").

## III. Discussion

**A.   Carbajal's Claim Against Defendant Blinken Under 8 U.S.C. § 1503(a)**.  Carbajal challenges the Department of State's June 11, 2019 decision denying her passport application (hereinafter, the "2019 denial").   Dkt. No. 16 at ¶¶ 28-30. Pursuant to 8 U.S.C. § 1503(a) and the DJA, Carbajal states that she is entitled to a declaratory judgment stating that she is a United States citizen.  *Id.* at ¶ 29.  As noted above, § 1503(a) applies to any individual within the U.S. who "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States[.]"  8 U.S.C. § 1503(a).  Section 1503(a) states that such an individual "may institute an action" under § 2201 of the DJA "against the head of such department or independent agency for a judgment declaring him to be a national of the United States." *Id.*  However, to obtain relief, the action must be brought "within five years after the final administrative denial of such right or privilege[.]"  8 U.S.C. § 1503(a).

Relying upon *Gonzalez v. Limon*,[7] and other similar decisions, Defendants contend that this Court lacks jurisdiction over Carbajal's § 1503(a) claim because it is time-barred. Dkt. No. 10 at 6; Dkt. No. 24 at 3-4.  Although she is challenging the Department of State's 2019 denial, Defendants claim Carbajal's § 1503(a) limitations period was triggered by the denial of an earlier passport application that she filed in 2010 (hereinafter, the "2010 denial").  Dkt. No. 10 at 6, 9.  Defendants note, and Plaintiffs do not deny, that the Department of State denied this earlier application on October 25, 2010.    Thus, Defendants argue that Carbajal's § 1503(a) limitations period expired on or about October 25, 2015.    As Carbajal did not file her original complaint in this lawsuit until September 21, 2019, Defendants assert that jurisdiction is lacking because Carbajal filed her instant lawsuit approximately four years too late.  *Id*.

Carbajal's response to Defendants' limitations argument is somewhat difficult to follow.  She initially appears to suggest that her § 1503(a) claim is not time-barred.  Dkt. No. 20 at 3-8.  She explains that, in denying her passport application in 2010, the Department of State did not make an affirmative finding that she lacked citizenship. Rather, the Department of State merely found that she had failed to provide enough evidence to prove her citizenship.  *Id*. at 3-5, 8.  Therefore, she suggests that the 2010 denial did not trigger the running of her limitations period under § 1503(a).  *Id*. at 4-5 ("[T]here has never been a finding that [Carbajal] is not a U.S. citizen, only that she has not (yet) provided sufficient evidence of her U.S. citizenship.  Therefore, there has never

---

[7]  In *Gonzalez v. Limon,* the Fifth Circuit found that the district court lacked jurisdiction over a plaintiff's § 1503(a) claim because the plaintiff did not challenge an agency denial of her rights and privileges as a national within five-years of the agency's first denial of those rights and privileges.  926 F.3d 186, 189 (5th Cir. 2019).

been an affirmative finding of non-U.S. citizenship, such as would bar a challenge under 8 U.S.C. §1503(a) to the denial of a later passport application[.]").

Yet, in her Sur-Reply, Carbajal appears to argue that she does not have a cause of action under § 1503(a) because the Department of State *has never* made an affirmative finding that she lacks citizenship.  That is, she appears to abandon her claim.  Dkt. No. 27 at 2-3.  She contends that the plain language of § 1503(a) does not allow a person claiming a right or privilege of U.S. citizenship to bring a § 1503(a) claim unless a government agency makes an affirmative finding that the person "*is not a national of the United States*[.]"  *Id.* at 2 (quoting 8 U.S.C. § 1503(a), emphasis added by Plaintiffs).  In the words of her counsel:

> [Section] 1503(a) does not allow an action where the denial is based on the ground that [the applicant] has not proven that he is a U.S. national: only where it is based on the ground that he is not a U.S. national. . . . *Actions under § 1503(a) should not be filed where, as here, the basis of the denial was that the person did not prove his U.S. citizenship.*  However, so far as the undersigned know and believe, this distinction has not previously been drawn.  So until it has been judicially established, it would be malpractice for an attorney not to bring a §1503(a) action for this reason.

*Id.* (emphasis added).  Carbajal then concludes by stating that she "will maintain" her § 1503(a) claim, "until the issue is settled."  *Id.* at 9.

The problem with Carbajal's incongruous arguments is that the Court cannot allow her to have her cake and eat it too.  Either the 2019 denial constitutes an actionable decision under § 1503(a), or it does not.  If it does, then Carbajal can bring suit under § 1503(a), provided her claim is timely.  If it does not, then she cannot.  But, she cannot

both bring suit under § 1503(a) *and* argue that an identical denial in 2010[8] is incapable of triggering § 1503(a)'s limitation period.  As Defendants note:

> If the 2010 denial did not constitute a denial of a right or privilege on the grounds that she is not a U.S. national then she cannot bring suit under § 1503(a).  Inexplicably, Plaintiffs seek to challenge the denial of Carbajal's 2018 passport application as falling under the purview of § 1503(a) but ignore the reality that her 2010 denial also established jurisdictional grounds for suit.

Dkt. No. 24 at 2-3 (footnote omitted).

Carbajal's attempt to distinguish *Gonzalez v. Limon* and the other cases relied upon by Defendants does not remedy the flaw in her arguments.  Carbajal's arguments *all* rest upon the premise that the 2010 denial failed to trigger her limitations period under § 1503(a) because the denial fell short of an affirmative finding that she was not a citizen. *See generally* Dkt. Nos. 20 and 27.  If the Court were to accept this premise, it would have to accept the premise that the 2019 denial failed to provide her with a cause of action under § 1503(a) because it too fell short of an affirmative finding that she was not a citizen. Either way, Carbajal loses.[9]

For this reason, the Court should not accept Carbajal's interpretation of § 1503(a). Not only would doing so fail to help Carbajal, it would also create hardship for a whole other class of passport applicants.  Specifically, it would create hardship for those applicants who want to file suit under § 1503(a) within five years of their first actionable

---

[8]  In denying Carbajal's 2010 passport application, the Department of State found that she had failed to provide sufficient evidence of citizenship.  *See* Dkt. No. 19 at 1 (stating that the documentation Carbajal provided was "not sufficient to establish by a preponderance of the evidence" that she had been "born in the United States.").

[9]  Though litigants are generally allowed to make arguments in the alternative, Carbajal is not asking the Court to consider an alternative argument, should her favored argument fail.  Instead, she is asking the Court to accept her premise, but then refuse to apply it consistently.  This the Court cannot do.

denial, but who never receive an affirmative finding that they are not citizens.  Under Carbajal's reading of § 1503(a), these applicants could not file suit.  One could argue that those applicants could merely keep at it until they received an affirmative pronouncement of non-citizenship.  But, even presuming the viability of this solution, requiring them to do so seems an unfair and unnecessary hurdle to impose upon applicants who present all existing evidence of their citizenship in their first application.  Carbajal points to no on-point authority that would allow the Court to eviscerate § 1503(a) in this manner.

Additionally, interpreting § 1503(a) in this way would run contrary to the "interest in finality" that Congress had when it enacted § 1503(a).  *See Gonzalez v. Limon*, 926 F.3d 186, 190 (discussing Congress's "interest in finality" and rejecting Gonzalez's request to interpret § 1503(a) to allow a new denial to restart her limitation period).  In *Gonzalez v. Limon*, Gonzalez brought a § 1503(a) claim to challenge a 2016 agency finding that she was not a citizen.  The Fifth Circuit found that Gonzalez's § 1503(a) claim was time-barred because she did not bring it within five-years of receiving a 2008 agency decision which also found that she lacked citizenship.  926 F.3d 186, 189.  The Fifth Circuit emphasized that § 1503(a)'s limitations period would be "empty of meaning" if a plaintiff could challenge a second, third, or fourth agency denial regarding citizenship, despite having failed to challenge their first, final agency denial within the five-year limitations period.  *Id*. at 189-190 (citations omitted).  In relevant part, the Fifth Circuit explained:

> The only dispute is whether Section 1503(a) permits Gonzalez to seek a declaration in connection with the 2016 Denial given USCIS's prior denial in 2008.  The Government argues we cannot interpret Section 1503(a) to allow plaintiffs to "restart the clock" by means of a follow-on denial. . . .

> Gonzalez, on the other hand, would have us resolve this case on the plain meaning of the statutory text, construed liberally as a remedial statute.  She points out that the statute includes no reference to a first or follow-on decision—only "the final administrative denial" from which the plaintiff's

action arises.  Section 1503(a)'s first sentence authorizes the district court to adjudicate a claim by "any person who is within the United States" where the plaintiff "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States."  Its last sentence provides that "[a]n action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege."  Gonzalez in effect contends that, in setting a limitations period, Congress had no concern with the finality of administrative decisions and with foreclosing opportunistic pleading via duplicative denials.

We cannot agree with Gonzalez's reading of the statute.  While the text is silent regarding duplicative denials, in defining a limitations period, Congress expressed its interest in finality.  Implicitly authorizing a series of duplicative claims would frustrate that interest.  Section 1503(a)'s reference to "the final administrative denial" means the first final administrative denial.

*Id.* at 189–90 (formatting altered, footnotes omitted).

Carbajal has failed to rebut Defendants' argument that her § 1503(a) claim is time-barred.  As such, it is recommended that the Court grant Defendants' Motion to Dismiss Carbajal's § 1503(a) claim for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See* 8 U.S.C. § 1503(a); *Gonzalez v. Limon*, 926 F.3d 186, 189-190.

### B.  Plaintiffs' Alleged Claim Against the USCIS Under 8 U.S.C. § 1503(a).

Defendants assert that Plaintiffs have attempted to assert a claim against the USCIS under § 1503(a) and argue that the claim should be dismissed.  *See* Dkt. No. 17 at 9-10.  Plaintiffs state that Defendants have misread their Complaint because they have made no such claim.  Dkt. No. 20 at 9.  Though Plaintiffs' Complaint is not a beacon of clarity, the Court agrees that Plaintiffs have not asserted a § 1503(a) claim against the USCIS.  *See generally* Dkt. No. 16.  Accordingly, Defendants' Motion to Dismiss on this ground is moot and should not be granted.

**C.  Plaintiffs' Alleged Claim Against William Barr**.  Defendants contend that Plaintiffs have attempted to assert a claim against William Barr.  Dkt. No. 17 at 13-14.  Plaintiffs' Live Complaint does not list William Barr, or any current or former Attorney General as a named defendant.  Dkt. No. 16 at 1-2.  Plaintiffs also explicitly deny having named Barr as a defendant.  Dkt. No. 20 at 13 (William Barr, the Attorney General, is not named as a Defendant in Plaintiffs' Second Amended Complaint.").  Defendants' Motion to Dismiss Plaintiffs' alleged claim against Barr is, therefore, moot and should not be granted.

**D.  Plaintiffs' APA Claims Against the USICS for Denying Carbajal's I-130 Petition and Garcia's I–485 Application**.  Plaintiffs assert that they both have an APA claim against the USCIS for denying Carbajal's I-130 petition.  Dkt. No. 16 at ¶¶ 31-32.  Dkt. No. 20 at 6, 8.  They also assert that Garcia has an APA claim against the USCIS for denying his I–485 application.  Dkt. No. 16 at ¶ 32.  Their Live Complaint and other submissions do not identify the violation of a specific rule, standard, law, or constitutional right.  Instead they merely state that the USCIS failed to conduct an evidentiary hearing regarding Carbajal's citizenship.  *Id*. at ¶¶ 31-33; *see generally* Dkt. Nos. 20 and 27.  Plaintiffs do not provide any authority to support their implied argument that the USCIS was required to conduct an evidentiary hearing.  *See id*.

**(1) Plaintiffs' Arguments Regarding the APA Standard of Review and Their Available Remedies**.[10]  Plaintiffs argue that this Court's review of the two USCIS denials should be de novo because the USCIS's factfinding procedures were inadequate.

---

[10]  The Court addresses Plaintiffs' arguments regarding their available remedies and the APA's standard of review primarily because a correct understanding of these factors is relevant to the Court's Article III standing analysis below.

Dkt. No. 16 at ¶ 33 ("No evidentiary hearing was conducted with respect to Ms. Carbajal's citizenship.  It therefore is urged that USCIS' factfinding procedures are inadequate, such that APA review would be de novo, under 5 U.S.C. §706(2)(F).").  They additionally assert that the Court should issue an injunction preventing the USCIS from "not reopening and approving" the I-130 petition and the I-485 application.  *Id*. at p. 8.

At the threshold, the Court notes that Plaintiffs have acknowledged that they both appeared for an interview with the USCIS.  Dkt. No. 16 at ¶ 22.  They have not explained how a hearing, as opposed to an interview, would have altered the USCIS's decisions.  More importantly, Plaintiffs' contentions regarding their available remedies and the APA standard of review are not supported applicable authority.  Although "§ 204(a) grants the right to submit an I–130 visa petition, it does not provide a right to an adjudicatory hearing."  *Offiong v. Holder*, 864 F. Supp. 2d 611, 618 (S.D. Tex. 2012) (citing "8 U.S.C. § 1154(a)(1)(A)(i), (B)(i)(i); 8 C.F.R. § 204.1(a)8 C.F.R. § 204.1(a)").  Even if this were not the case, Plaintiffs have not shown a right to: (1) de novo review; or (2) an injunction requiring the USCIS to approve Carbajal's I-130 petition and Garcia's I-485 application.  As the court in *Safety Nat. Cas. Corp. v. U.S. Dep't of Homeland Sec*. has explained, the two applicable general rules are that: (1) the "arbitrary and capricious" standard applies except in rare circumstances; and (2) remand with non-dispositive instructions is the appropriate remedy if a plaintiff meets the arbitrary and capricious standard.  711 F. Supp. 2d 697, 707 (S.D. Tex. 2008).

> In *Citizens to Preserve Overton Park, Inc. v. Volpe*, the Supreme Court held that de novo review "is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate."  401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *see also Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (noting that "de novo review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to

> enforce certain administrative actions."). After *Overton Park*, "*de novo* review of agency adjudications has virtually ceased to exist. In its stead, the arbitrary and capricious' standard of review of 5 U.S.C. § 706(2)(A) is now applied to review of agency determinations in the adjudicatory setting." *Sierra Club v. Peterson*, 185 F.3d 349, 368 n. 29 (5th Cir. 1999). De novo review is only available "in special circumstances where [an] agency does not possess adequate factfinding procedure, not just that it failed to employ adequate procedures." 33 CHARLES ALAN WRIGHT AND CHARLES H. KOCH, JR., FEDERAL PRACTICE AND PROCEDURE § 8332. Furthermore, "[w]here a court finds that the agency factfinding is inadequate but that the agency has the procedural authority to correct the inadequacy then the court's proper function is to return the matter to the agency with instructions as to how to correct the inadequacy." *Id.* § 8372.

*Id. See also Andritz Sundwig GmbH v. United States*, No. CV 4:18-2061, 2018 WL 3218006, at *5 (S.D. Tex. July 2, 2018) (same); *O'Reilly v. U.S. Army Corps of Engineers*, 477 F.3d 225, 238–39 (5th Cir. 2007) ("As a general rule, an agency decision is not sustainable on the basis of the administrative record, then the matter should be remanded to [the agency] for further consideration. Only in rare circumstances is remand for agency reconsideration not the appropriate solution.") (citations and internal quotations omitted).

Plaintiffs have not shown that their claims are exempt from these general rules. They have not shown that the USCIS was required to conduct an evidentiary hearing. They have not explained how an evidentiary hearing, as opposed to an interview, would have altered the USCIS's decisions. They have not stated that either Plaintiff requested an evidentiary hearing. They have not stated the USCIS lacks the procedural authority to provide an evidentiary hearing or other adequate procedure, if properly requested. Thus, if Plaintiffs were to demonstrate that this Court has jurisdiction over their APA claims, the arbitrary and capricious standard would apply, and Plaintiffs could only obtain a remand with non-dispositive instructions, if they met that standard.

**(2) Article III Standing**.  To demonstrate Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *El Paso Cnty. v. Trump*, 982 F.3d 332, 336 (5th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  A plaintiff suing under the APA "must satisfy Article III's standing requirements."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012).  The party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists.  *Ramming v. United States*, 281 F.3d 158, 161 (citations omitted).

**(i) Traceable Injury in Fact and Redressability**.  The USCIS cannot approve an I-130 petition unless the petitioner is a citizen or legal permanent resident.  8 U.S.C. § 1154(a)(1)(A)(i).  *See also Martinez v. Pompeo*, 977 F.3d 457, 459 (5th Cir. 2020) (noting that the I-130 petitions Martinez filed on behalf of his wife and her daughter "required Martinez to demonstrate that he was a U.S. citizen.").  Similarly, the USCIS cannot approve an I–485 application unless it first approves the underlying I-130 petition.  8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a).

Carbajal has not received an agency finding of citizenship, but Plaintiffs have not alleged facts indicating the USCIS's failure to conduct an evidentiary hearing caused this circumstance or the resulting denial of her I-130 petition.  As noted above, Plaintiffs have not explained how a hearing, as opposed to an interview, would have altered the USCIS's decisions.  They have not stated that the USCIS excluded evidence regarding Carbajal's citizenship.  They have not stated that the USCIS violated any specific right, law, rule, or

standard when analyzing the evidence pertaining to her citizenship. Consequently, Plaintiffs have not shown that the USCIS's failure to conduct an evidentiary hearing caused the denial of the I-I30 petition or the I-485 application. Having failed to make this traceable injury-in-fact showing, they lack Article III standing to pursue their APA claims. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (noting that a person suing under the APA "must satisfy Article III's standing requirements"); *El Paso Cnty.*, 982 F.3d 332, 336 (noting that an APA plaintiff must show a traceable "injury in fact."); *Ramming v. United States*, 281 F.3d 158, 161 (noting that the party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists) (citations omitted).

Relatedly, Plaintiffs have not provided any facts indicating that the USCIS would "likely" find that Carbajal has citizenship, if it were to reopen her I—130 petition proceedings and provide her with a hearing. *See El Paso Cnty. v. Trump*, 982 F.3d 332, 336 (noting that, to satisfy the redressability prong of Article III standing, a plaintiff must show that "it is likely, as opposed to merely speculative," that their injury "will be redressed by a favorable decision."). First, on a very basic level, Plaintiffs have not addressed the USCIS's authority to make such a finding in I-130 proceedings. *See generally* Dkt. Nos. 16, 20 and 27. Second, presuming that the USCIS possesses such authority, Plaintiffs have not explained how a hearing would cause the USCIS to alter its conclusions regarding her place of birth. Plaintiffs have not even addressed whether the evidence submitted to the USCIS differs from the evidence provided to the Court. This is critical because the evidence Plaintiffs have submitted to the Court demonstrates that

there is a dispute regarding her citizenship, but it does not establish that she is a U.S. citizen. *See* Dkt. Nos. 5-1 and 14-3.[11]

Third, Plaintiffs have failed to alleged facts or authority indicating that this Court could declare Carbajal a citizen and then remand her case with instructions to grant her I-130 petition.  She has waited too long to obtain a declaration of citizenship under § 1503(a). *See Supra* at pgs. 11-16.  Further, presuming she could proceed under the APA despite failing to timely pursue her § 1503(a) remedy, Plaintiffs have not alleged facts indicating that Carbajal has a right to a judicial declaration of citizenship under the APA. Plaintiffs have not stated that the USCIS violated any specific right, law, rule, or standard when analyzing the evidence that Carbajal provided in support of her citizenship. Therefore, their failure to allege facts identifying even a potential APA violation means that they have not alleged facts indicating a right to an APA remedy.

At this juncture, then, Plaintiffs have not shown that a remand to the USCIS would likely result in the approval of Carbajal's I-130 petition.  Having failed to show a likelihood of the I-130 petition's approval, Garcia has also failed to show that USCIS could reopen and approve his I–485 application.  Because Plaintiffs have failed to show that this Court could redress their injuries by remanding their case with instructions, they have failed to show that they possess Article III standing to pursue their APA claims. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (noting that a person suing under the APA "must satisfy Article III's standing requirements"); *El Paso*

---

[11] The Court's comment on this evidence is not offered as a finding on the merits of Plaintiffs' APA claims. Instead, it is provided only to show that Plaintiffs have not satisfied the redressability prong of Article III.  That is, they have not demonstrated redressability because: (1) they have not alleged facts showing that the USCIS would likely alter its decision if the Court were to issue a remand; and, *alternatively,* (2) they have not shown that they possess evidence which would likely cause the USCIS to alter its decision.

*Cnty.*, 982 F.3d 332, 336 (noting that a plaintiff must show that "it is likely, as opposed to merely speculative," that their injury "will be redressed by a favorable decision."); *Ramming v. United States*, 281 F.3d 158, 161 (noting that the party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists) (citations omitted). As such, the Court should dismiss their claims pursuant to Rule 12(b)(1) for lack of jurisdiction.[12]

**E.  Plaintiffs' Ostensible Claims Challenging the USCIS's Factfinding Procedures Under the APA.**  Defendants contend that Plaintiffs' Live Complaint appears to assert a separate APA claim challenging the USCIS's factfinding procedures under the APA.  DKt. No. 17 at 9-10 (referencing Dkt. No. 16 at ¶ 33).  Plaintiffs indicate that the USCIS's "inadequate" failure to conduct an evidentiary hearing caused the Department of State to deny Carbajal's passport application.  *Id.* at ¶¶ 29, 33.[13]  To the extent that Plaintiffs are attempting to assert a separate APA claim challenging the USCIS's factfinding procedures, they have failed to challenge final agency action.  As such,

---

[12]  Garcia may also lack Article III standing to challenge Carbajal's I-130 petition because he is only the beneficiary of the petition.  *See Siddhantam v. Sessions*, No. 3:17-CV-2001-S, 2018 WL 4053366, at \*3–5 (N.D. Tex. Aug. 24, 2018) (collecting case and finding that the beneficiary of an I-130 petition lacked Article III standing under the APA to challenge the denial of the I-130 petition).  However, because the Court has already found that he lacks standing for separate reasons, it need not decide whether Garcia's status as a beneficiary deprives him of standing.  *See e.g., Liu v. Lynch*, 149 F. Supp. 3d 778, 784 n. 5 (S.D. Tex. 2016), *judgment entered*, No. CV H-14-3052, 2016 WL 836653 (S.D. Tex. Mar. 3, 2016) ("This court has recently held that intended I-130 petition beneficiaries lack standing to contest the denial of the petition. . . . Because the petitioner, Lam, is also a plaintiff . . . it is unnecessary to decide whether Liu also has standing.") (citing *Olugbenle v. Heathman*, No. 14–cv–3085, 2015 WL 3546996, at \*5 (S.D. Tex. June 8, 2015)).

[13]  Plaintiffs also state that "DOS did not provide [Carbajal] with an opportunity to address any concerns they may have [had] regarding her birth in Texas[.]" Dkt. No. 16 at 7.  This statement is not supported by the record.  *See* Dkt. No. 5-1 at 1 ("Although the [passport] application is denied, you may submit with 60 days any further information you feel specifically rebuts the conclusions reason listed above for the denial[.]" (errors in original).

they have failed to state a claim within the jurisdiction of this Court and Defendants' Motion to Dismiss on this ground[14] should be granted under Rule 12(b)(1).  *See* 5 U.S.C. § 704 (stating that agency action is not reviewable under the APA unless it is final); *Desmore v. Dep't of Homeland Sec.*, No. CV G-14-191, 2016 WL 561176, at *6–7 (S.D. Tex. Feb. 12, 2016) ("[T]he court may review only Defendant's final decision to deny Desmore's I–130 form, not specific BIA actions previous to that determination, including the decision not to interview Robinson."); *Castro v. Freeman*, No. CIV.A. B-09-208, 2011 WL 11535494, at *6 (S.D. Tex. Nov. 22, 2011) (noting that procedures used by agencies in reaching their final decisions are not reviewable under the APA because such procedures are not "final agency action").

 **F.  Conclusion**.  Plaintiffs' Live Complaint fails to assert any causes of action within the jurisdiction of this Court.  Therefore, Defendants' Motion to Dismiss should be granted, to the extent addressed above, and Plaintiffs' Live Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## IV.  Recommendation

 It is recommended that the Court: (1) **GRANT** Defendant's Motion to Dismiss (Dkt. No. 17), to the extent addressed above; (2) **DISMISS** Plaintiffs' Live Complaint for lack of jurisdiction; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## V.  Notice to the Parties

 A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

---

[14] *See* Dkt. No. 17 at 11; Dkt. No. 24 at 7, note 5.

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

 **SIGNED** on this **4th** day of March, 2021, at Brownsville, Texas.

           _____
           **Ignacio Torteya, III**
           **United States Magistrate Judge**